KORNFELD & ASSOCIATES, P.C.
Special Counsel to the Debtor and
Debtor-in-Possession
570 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 759-6767
Randy M. Kornfeld (RMK 9908)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IN RE:                                                   Case No. 09-14792 (BRL)

PENNY & KENNY SHOES, LLC,                    Chapter 11

                                    Debtor.

-----------------------------------------------------------------X

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING
THE DEBTOR TO OBTAIN POST-PETITION FINANCING WITH CROSS-
COLLATERALIZATION AND SCHEDULING A FINAL HEARING PURSUANT
TO FED. BANKR. R. 4001**

**TO:   HONORABLE BURTON R. LIFLAND,
         UNITED STATES BANKRUPTCY JUDGE**

Debtor and Debtor-in-Possession, PENNY & KENNY SHOES, LLC ("P&K")

("P&K," "Debtor" or "Movant") by Kornfeld & Associates, P.C., special counsel to the

Debtor for this motion, file this motion ("Motion") for emergency interim and final

orders authorizing the Debtor to obtain post-petition financing and scheduling a final

hearing pursuant to Bankruptcy Rule 4001 and, in support thereof, represent as follows:

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Venue

is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).  The statutory

predicate for the relief requested herein is Bankruptcy Code §§ 105(a) and 364(c) and (d) and Bankruptcy Rule 4001.

## BACKGROUND

2.  On July 31, 2009, the Debtor commenced proceedings under Chapter 11 of Title 11 of the United States Code.  In accordance with 11 U.S.C. §1107, Movant, as Debtor-in-Possession has the powers and duties of a trustee and in accordance with 11 U.S.C. §1108, is authorized to continue in the operation of its business and the management of its properties.  No trustee, examiner or creditors' committee has been appointed.

3.  The Debtor is a New York limited liability corporation.  Stuart Chalfin and Kenny Robinson are senior management.  The Debtor maintains leases at the following two addresses: 1370 Avenue of the Americas, New York, NY and 1934 Olney Avenue, Suite 102, Cherry Hill, NJ.  The Debtor is an importer and distributor of women's junior shoes.

4.  Recently, due to the economic downturn, the delivery of inferior product from suppliers, and the institution of frivolous litigation against it, the Debtor has depleted its cash flow and cannot remain in operation without outside financing.  The Debtor believes that, if it can remain in operation, it can become profitable again as it enjoys excellent relations with its customers.

5.  As is more fully set forth herein, the Debtor respectfully requests an interim hearing, pending a final hearing and order, authorizing the Debtor to borrow funds from Ultimate Financial Solutions, LLC, d/b/a Ultimate Factoring Services ("Ultimate," "Factor," or "Lender"), pursuant to the proposed interim order (the "Interim Order") (**Exhibit A**) to enable it to continue operations. Absent immediate temporary financing,

the Debtor will not be able to continue operating with sufficient cash flowing, resulting in the loss of jobs as well as the Debtor's ability to pay unsecured creditors in this case.

## RELIEF REQUESTED

6.   By this Motion, the Debtor seeks authorization to, in accordance with its budget (the "Budget") (**Exhibit B**), affirm, continue and ratify its various pre-petition agreements with Ultimate (the "Pre-Petition Agreements") (**Exhibit C**) and enter into a new addendum the ("Addendum") (**Exhibit D**) with Ultimate containing only minor modifications of the Pre-Petition Agreements.  The ratification of the Pre-Petition Agreements along with the Addendum (collectively, the "Financing Agreement"), should provide the Debtor with the funds necessary to have sufficient cash flow to remain in business.  In accordance with Bankruptcy Rule 4001, the following is a summary of the proposed financing.

**7.   Cross-Collateralization.  By this Motion, the Debtor also seeks authorization, in accordance with Section II A of this Court's Guidelines for Financing Requests, for cross-collateralization on behalf of Ultimate in order for Ultimate to secure Debtor's pre-petition debt to it with liens on Debtor's post-petition assets.**

8.   Ultimate, the proposed post-petition lender herein, was the Debtor's pre-petition lender pursuant to the Pre-Petition Agreements, including but not limited to, a factoring agreement dated July 14, 2006 with related letter of credit and/or purchase guarantee agreement dated July 14, 2006, inventory security agreement dated July 14, 2006, equipment security agreement dated July 14, 2006 and related guarantees and exhibits (**Exhibit C**).  All advances made by Ultimate were secured by, among other things, the Debtor's accounts receivable, general intangibles, contract rights, chattel paper,

inventory, and the proceeds of such collateral, and the guarantees and cash collateral from the guarantors (the "Pre-Petition Collateral").

9. Upon information and belief, Ultimate duly perfected its security interests in all necessary jurisdictions.

10. As of the date of the filing of this Chapter 11 Petition, Debtor's obligation to Ultimate was approximately $477,000. The Debtor had sold to Ultimate accounts receivable which were outstanding at the date of filing of the Petition herein amounting to approximately $410,000 in the aggregate.

11. Ultimate has agreed to finance the Debtor's post-petition operations in accordance with the terms of the Financing Agreement and subject to the terms and conditions of the Financing Agreement, Interim Order and Final Order. In addition, Ultimate is secured by guarantees.

12. Pursuant to the Financing Agreement, Ultimate, in its sole discretion, has agreed to make funds available to the Debtor by advancing to the Debtor up to seventy-five percent (75%) percent of the eligible accounts receivable (the "Post-Petition Advances"). All of the Post-Petition Advances shall be secured by a first lien and security interest on all of the Debtor's Post-Petition assets in the same category as the Pre-Petition Collateral.

13. The proposed financing is almost identical to the pre-petition financing and is generally a ratification and continuation of the Pre-Petition Agreements. The only changes are memorialized in the Addendum annexed hereto as **Exhibit D** and described below. The Post-Petition Advances shall be cross-collateralized by a lien on the Pre-Petition Collateral, subject only to existing duly perfected liens existing on the date of the Chapter 11 Petition filed herein that are superior to Ultimate's lien and subject to and

subordinated to the fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a), the reasonable expenses of the Unsecured Creditors Committee members (if appointed), and the expenses of a Trustee under Section 726(b).

14. The Interim Order provides that, pursuant to §364(c)(l) of the Bankruptcy Code, the Post-Petition Advances shall be granted super priority status over all administrative expenses incurred by the Debtor with the exception of fees due the United States Trustee pursuant to 28 U.S.C. §1930(a), the reasonable expenses of the Unsecured Creditors Committee members (if appointed), and the expenses of a Trustee under Section 726(b).

15. In order adequately to protect Ultimate's interest in the Pre-Petition Collateral, the Interim Order provides that relief from the automatic stay shall be granted to permit Ultimate to assert its rights to and realize upon all pre-petition accounts receivable and to direct the Debtor to pay any collections on the pre-petition receivables received by the Debtor to Ultimate. The Interim Order provides for relief from the automatic stay to the extent necessary to permit the Debtor to continue to sell its accounts to Ultimate in accordance with the Interim Order and to permit Ultimate to administer the Pre-Petition Agreements and post-petition Financing Agreement and collect the accounts in the ordinary course of its business. Additionally, the stay is modified to permit the execution and filing of any financing statements necessary for the perfection of the liens and security interests granted to Ultimate by the Interim Order.

16. The Interim Order also authorizes the Debtor upon notice to the United States Trustee and the Unsecured Creditors Committee (if formed) to reimburse Ultimate for all costs incurred in connection with the Interim Order, including all of the reasonable legal

fees and expenses of counsel to Ultimate, all of which costs and expenses are to be included in the amount of Post-Petition Advances.

17. The terms of the Financing Agreement are identical to those in the Pre-Petition Agreements except for the modifications contained in the Addendum: a change in the rate of advances for eligible receivables from 80% to 75%, a change in the base factoring commission from .8% to 1.5% and a change in the interest rate from 1% above prime to the greater of either 7.5% or 4.25% above prime.  Notwithstanding the foregoing, the Financing Agreement may be terminated, for any reason by Ultimate upon not less than five (5) days written notice, and thereafter, upon five (5) days written notice to the Court, Ultimate may be granted relief from the stay pursuant to § 362(d) of the Bankruptcy Code, to permit it to assert its rights as a secured party to the Pre-Petition Agreements and Financing Agreement and to enforce its security interest against its collateral.

18. Finally, in the event of the Debtor's failure to perform its obligations under the Interim Order, the occurrence of any default by the Debtor under the Interim Order, or the subordination of any security interest of Ultimate or upon other specified events, Ultimate, upon five days' notice, may be granted relief from the stay pursuant to §362(d) of the Bankruptcy Code, to permit it to assert its rights as a secured party as provided in the Pre-Petition Agreements and the Financing Agreement  and to enforce its security interest against its collateral.

19. Nothing contained herein shall be construed to obligate Ultimate to enter into the Financing Agreement and any interim loans made by Ultimate post-petition shall become immediately due and payable to Ultimate if Ultimate determines not to enter into the Financing Agreement.

## LEGAL BASIS FOR REQUESTED RELIEF

### A. The proposed Financing Agreement

20. The Financing Agreement provides that all monies advanced will be secured by the Pre-Petition Collateral, as that term is used in the Financing Agreement. The Financing Agreement also states that the Lender will receive a "super-priority" administrative expense claim.

21. Bankruptcy Code § 364(c)(1) provides that if a debtor is unable to obtain unsecured credit, the Court may, after notice and a hearing, authorize a debtor to incur debt which has "priority over all administrative expenses of the kind specified in Bankruptcy Code § 503(b)…"

22. These provisions permit the Court to grant the Lender super-priority administrative claims, as contemplated by the Financing Agreement. Thus, the liens and priorities contemplated by the Financing Agreement are expressly authorized by the Bankruptcy Code.

23. Furthermore, the Debtor believes that it has no other secured creditors. The Debtor submits that the liens and priorities are appropriate to secure the proposed financing. The Debtor's working capital needs and ability to reorganize can be satisfied only if the Debtor is authorized to borrow and incur indebtedness under the Financing Agreement and to use such proceeds to fund its ongoing operations, including paying rent, payroll, purchases, expenses, costs and to have adequate cash flow.

24. The Debtor has concluded, in its business judgment, that the proposed Financing Agreement is appropriate and is in the best interest of the bankruptcy estate. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions,

including the decision to borrow money. See Group of Institutional Investors v. Chicago, Mil., St. P., and Pac. R.R. Co., 318 U.S. 523, 550 (1943); In re Simask Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); In re Lifeguard Indus., Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983 (same); Richmond Leasing co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially.").

25. In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. In re Curlew Valley Assocs., 14 B.R. 506, 511-513 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." Id. at 513-514 (footnotes omitted).

26. The Debtor has exercised sound business judgment in determining that the proposed financing is appropriate, and the Debtor has satisfied the legal prerequisites to borrow under the Financing Agreement. The terms of the Financing Agreement are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to enter into the Financing Agreement and borrow funds from Ultimate on the secured, administrative, super-priority basis described above, and take the other actions contemplated by the Financing Agreement and as requested herein.

**B. The Terms of the Financing Agreement are Fair, Reasonable and Appropriate**

27. As stated, the proposed terms of the Financing Agreement are fair and reasonable and were negotiated by the parties in good faith and at arm's length. Accordingly, the Lender under the Financing Agreement should be accorded the benefits of Bankruptcy Code § 364(e) in respect of such agreement.

**C. The Cross-Collateralization Requested is Necessary**

28. As described in the annexed affidavit of Stuart Chalfin, managing member of the Debtor, the Cross-Collateralization described above is reasonable and necessary to the survival of the Debtor under the circumstances. Absent the proposed financing, the Debtor will cease operating. The Debtor is unable to obtain alternative financing. Ultimate, the Debtor's pre-petition lender with security as previously described herein, has not requested side collateral unlike other proposed lenders. Finally, the proposed financing will render the Debtor's creditors more likely to be paid. See In re Vanguard Diversified, Inc., 31 B.R. 364, 366 (E.D.N.Y. 1983).

**D. Request for Immediate Relief**

29. Pending a final hearing on this Motion, the Debtor requires immediate use of the financing discussed herein for business operations in accordance with the Budget. It is essential that the Debtor have cash immediately available to it to permit it to continue to make payroll and manufacture and sell merchandise. The amount requested pending the final hearing is $1,342,000.

30. Absent immediate use of the financing, the Debtor will be unable to remain in the Office, make payroll and continue to manufacture and sell its product. Consequently, if

interim relief is not obtained, the Debtor's assets will be immediately and irreparably jeopardized, to the detriment of its estate, its creditors and other parties in interest.

31. Accordingly, the Debtor respectfully requests that, pending the final hearing, the Court consider at the Interim Hearing scheduled for Wednesday, August 12th at 10:00 a.m. the Debtor's request for authorization to obtain interim financing under the Financing Agreement, in accordance with and pursuant to the terms and conditions contained in the Financing Agreement, the Budget and the Interim Order.

32. Bankruptcy Rule 4001(c)(2) permits a court to approve a debtor's request for financing during the 15-day period following the filing of a motion requesting authorization to obtain post-petition financing, "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. See, e.g., In re Ames Dept. Stores, Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). After the 15-day period, the request for financing is not limited to those amounts necessary to prevent destruction of the debtor's business. A debtor is entitled to borrow those amounts that it believes prudent in the operation of its business. See id. at 36; Simask, supra, at 449.

33. The Debtor is presently unable to obtain funds which are necessary for it to continue operations in the form of unsecured credit pursuant to §364 of the Bankruptcy Code.

34. For the foregoing reasons, the Debtor believes that granting the relief requested herein is appropriate and in the best interest of its estate.

## NOTICE

35.   No trustee, examiner or statutory committee has been appointed in this Chapter 11 case.

36. Sufficient notice has been given as this Motion has been provided to: Ultimate, the Debtor's twenty largest unsecured creditors, any alleged secured creditors or their counsel, the United States Trustee, and all parties who filed notices of appearance.

37. Since no new or novel issues are raised by the relief requested herein, Debtor respectfully requests that the Court dispense with and waive the requirements for filing a supporting memorandum of law.

38. Debtor proceeds by order to show cause for the reasons set forth in the accompanying affidavit of Stuart Chalfin, Managing Member of the Debtor.

39. No previous application for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtor requests entry of the order annexed hereto granting the relief requested herein, and such other and further relief as the Court deems just and proper.

Dated: New York, New York
        August 5, 2009

**KORNFELD & ASSOCIATES, P.C.**
*Special Counsel to the Debtor*


By:__/s/ Randy Kornfeld_____
Randy M. Kornfeld (RMK 9908)
570 Lexington Avenue, 17th Floor
New York, NY  10022
(212) 759-6767