UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                    :

                                                          :       Chapter 11
                                                          :       Case No. 09-14792 (BRL)

PENNY & KENNY SHOES LLC,
d/b/a P& K, d/b/a PLK, d/b/a
PENNY LOVES KENNY,

                                                          :
                          Debtor.
------------------------------------------------------------X


## FINAL ORDER AUTHORIZING DEBTOR IN POSSESSION FINANCING GRANTING SENIOR LIENS AND PRIORITY ADMINISTRATIVE EXPENSE AND AUTHORIZING DEBTOR TO ASSUME AND RATIFY ITS FACTORING AND FINANCING AGREEMENTS WITH ULTIMATE FINANCIAL SOLUTIONS LLC DOING BUSINESS AS ULTIMATE FACTORING SERVICES AND GRANTING ADEQUATE PROTECTION


Upon the motion of Penny & Kenny Shoes LLC ("Debtor"), dated August 4, 2009

(the "Motion"), seeking, inter alia, (i) authority pursuant to Sections 364(c)(1), 364(c)(2), and

364(c)(3) of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Code") and

Bankruptcy Rules 4001 and 9014, for the Debtor to obtain, post-petition loans, advances and

other credit accommodations from Ultimate Financial Solutions LLC doing business as Ultimate

Factoring Services ("UFS") secured by security interests in and liens upon all of the Debtor's

now existing and hereafter acquired personal and real property and fixtures and the proceeds

thereof, pursuant to Sections 364(c)(2) and 364(c)(3) of the Code; (ii) authority for the Debtor to

assume and ratify its pre-petition factoring agreement and related financing agreements with

UFS (the "Pre-Petition Agreements") and enter into an addendum with UFS (the "Addendum")

concerning the Pre-Petition Agreements (collectively, the "Financing Agreement"); (iii) the

modification of the automatic stay; (iv) the granting to UFS of adequate protection and super-

priority administrative claim status pursuant to Section 364(c)(1) of the Code, (v) the setting of

an interim hearing on August 12, 2009 (the "Interim Hearing") regarding the Debtor's request

for financing, pursuant to an interim order dated August 13, 2009 (the "Interim Order"), pending

a final hearing and (vi) the setting of a final hearing (the "Final Hearing") on the Motion. At the

Interim Hearing, Debtor's counsel advised the Court that each of the parties set forth below

received due notice of the Motion pursuant to Rules 4001(c)(1) and 1007(d) of the Federal Rules

of Bankruptcy Procedure ("Bankruptcy Rules"): (a) the Office of the United States Trustee, (b)

the attorneys for UFS, (c) all creditors known to Debtor who may have liens against the Debtor's

assets, (d) the United States Internal Revenue Service, (e) the twenty (20) largest unsecured

creditors of the Debtor; (f) all landlords, owners, operators and mortgagors of the premises at

which any inventory of the Debtor is located; (g) all other interested third parties in possession of

any of the inventory, of the Debtor; (h) and all parties in interest that have filed a Notice of

Appearance in the Debtor's Chapter 11 Case; and it further

APPEARING that the Debtor has filed a voluntary petition for reorganization

under Chapter 11 of the Bankruptcy Code on July 31, 2009 (the "Petition Date"), and the Debtor

thereafter continued in the management and possession of its business and property as debtor-in-

possession pursuant to Sections 1107 and 1108 of the Code; and it further

APPEARING that the Court has entered an Order to Show Cause Why an Order

Should Not be Entered Authorizing Debtor to Obtain Interim Financing, Granting Senior Liens,

Cross-Collateralization, Priority Administrative Expense and Authorizing Debtor to Assume and

Ratify Its Factoring and Financing Agreements with Ultimate Financial Solutions LLC dated July 14, 2006 (the "Order to Show Cause"), setting the Interim Hearing and Final Hearing; and it further

ALLEGED that prior to the commencement of Debtor's Chapter 11 Case, UFS had made loans and advances and agreed to provide credit accommodations to the Debtor pursuant to the terms of the Pre-Petition Agreements annexed as Exhibit "C" to the Motion, including, without limitation, a certain factoring agreement, security agreements and related agreements executed and delivered by the Debtor with, to or in favor of UFS, as well as the Uniform Commercial Code financing statements filed by UFS against Debtor; and it further

ALLEGED, that the principal amount of all obligations, liabilities and indebtedness of Debtor to UFS, existing prior to the commencement of the Chapter 11 Case, as of July 31, 2009, being approximately $477,000 together with all interest, fees, costs and expenses accrued and accruing with respect thereto pursuant to the terms of the Pre-Petition Agreements (collectively, the "Pre-Petition Debt"), is secured pursuant to the Pre-Petition Agreements by perfected and valid security interests in, and liens upon, all of Debtor's personal and fixture property of every kind and nature including without limitation all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including heath-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property,

supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, and all general intangibles (including all payment intangibles), and all products and proceeds thereof (collectively, the "Pre-Petition Collateral"); and it further

ALLEGED, that Debtor has requested that UFS continue factoring its post-petition accounts and making loans, advances and other financial accommodations to Debtor in order to provide funds to be used by Debtor for its general operating, working capital and other business purposes to continue in business and remain viable during its reorganization; and it further

ALLEGED, that all such additional loans, advances and other financial accommodations by UFS will benefit the Debtor and its estate; and it further

ALLEGED, that UFS is willing to make such loans and advances and provide such other credit accommodations on a secured basis as more particularly described herein and subject to the terms and conditions contained herein and in the Financing Agreement consisting of the Pre-Petition Agreements annexed to the Motion as Exhibit "C" and the Addendum annexed to the Motion as Exhibit "D"; and it further

ALLEGED, that the ability of the Debtor to continue its business depends upon obtaining such financing from UFS; and it further

ALLEGED, that without the proposed financing, the Debtor will not have the funds necessary to pay its post-petition payroll, payroll taxes, overhead and other expenses necessary to conduct its business and the management and preservation of its assets and property; and it further

ALLEGED, that the budget prepared by Debtor annexed to the Motion as Exhibit "B" and made a part hereof (the "Budget") has been reviewed by Debtor and its management and sets forth the anticipated borrowings of the Debtor for the periods covered thereby and has been relied upon by UFS in determining to enter into the Financing Agreement with the Debtor; and it further

ALLEGED, that this Court has jurisdiction to enter this Order pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (M) and 1334; and it further

APPEARING, that the Interim Hearing was held on the Motion on August 12, 2009, at which hearing appearances were noted in the record and the Interim Order having been signed by the Court on August 13, 2009; and it further

APPEARING, that on August 28, 2009, the United States Trustee appointed an official committee of unsecured creditors (the "Creditors Committee").

NOW, THEREFORE, upon the Motion, the files and pleadings in this case, the record of the proceedings heretofore held before this Court with respect to the Motion and upon

completion of such hearing and after due deliberation and sufficient cause appearing therefor, the Court finds as follows:

A.      Debtor is unable to obtain unsecured credit allowable under Section 503(b)(1) of the Code, or pursuant to Sections 364(a) and (b) of the Code, except on the terms and conditions set forth herein.

B.      No other source of financing exists other than from UFS.

C.      The Motion was filed on August 5, 2009 and Debtor has provided actual notice of the terms of the Motion and the relief requested thereunder by overnight courier delivery on or before August 6 , 2009 to (i) the Office of the United States Trustee, (ii) the attorneys for UFS, (iii) all creditors known to Debtor who may have liens against the Debtor's assets, (iv) the United States Internal Revenue Service, (v) the twenty (20) largest unsecured creditors of the Debtor; (vi) all landlords, owners, operators and mortgagors of the premises at which any inventory of the Debtor is located; (vii) all other interested third parties in possession of any of the Debtor's inventory; and (viii) all parties in interest that have filed a Notice of Appearance in Debtor's Chapter 11 case, all as more fully described in the Certificate of Service filed by counsel for Debtor. Sufficient and adequate notice of the Motion and the hearing with respect thereto has been given pursuant to Bankruptcy Rules 2002, 4001 (c) and (d) and 9014 and Section 102(1) of the Code as required by Sections 364(c) of the Code and no further notice of, or hearing on the relief sought in the Motion is necessary or required, and as required therein, a copy of the Interim

Order has been served by first class mail on August 14, 2009.

D.      Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K) and (M). This Order is subject to, and UFS is entitled to the benefits of, the provisions of Section 364(e) of the Code. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§157 and 1334.

E.      The terms of the Financing Agreement between the Debtor and UFS, pursuant to which UFS will factor the Debtor's accounts and provide post-petition loans, advances and other credit accommodations may be made or provided to Debtor by UFS have been negotiated in good faith and at arms' length as that term is used at Section 364(e) of the Code and is in the best interests of the Debtor.

F.      Good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

1.      The Motion is granted and it is hereby approved to the extent provided herein.

2.      Good and sufficient notice of the Motion's request for entry of this Final Order and the hearing thereon has been provided in accordance with Sections 102(1) and 364(c)(1), (2),

and (3) of the Code, Bankruptcy Rule 2002 and 4001 and any requests for other and further notice shall be and are hereby dispensed with and waived.

3.      The relief granted by this Court pursuant to this Final Order is necessary to avoid immediate and irreparable harm to the Debtor's estate.

4.      Debtor is hereby authorized and empowered to factor its accounts and obtain loans and advances from, or otherwise incur obligations to, UFS, on a revolving basis pursuant to the terms of this Final Order and the terms and conditions set forth in Financing Agreement, in such amount or amounts as may be made available to Debtor from UFS, in UFS's sole and complete discretion, exercised in good faith (the "Post-Petition Debt").

5.      Debtor shall use the proceeds of the loans and advances made, and other credit accommodations provided by UFS to Debtor as set forth in the Budget solely for the payment of employee salaries, payroll, taxes, collection of accounts, and other general operating and working capital purposes in the ordinary course of Debtor's business to the extent and for the purposes set forth in the Budget (including amounts paid for such purposes which may constitute administrative expense claims under the Bankruptcy Code, attributable to the operation of the business of the Debtor which are approved by the Court), and in accordance with the terms and conditions of the Financing Agreement.

6.      Debtor is authorized and directed to execute, deliver, perform and comply with

the terms and covenants of the Financing Agreement.

7.     The terms and conditions of the Financing Agreement shall be deemed to be incorporated into the terms and conditions of this Final Order and shall be sufficient and conclusive evidence of the borrowing arrangements between the Debtor and UFS, for all purposes, including the payment of all fees, interest, commissions and expenses as more fully set forth in the Financing Agreement.

8.     Debtor has acknowledged and agreed, subject to the provision and rights set forth in paragraph 9, that as of the Petition Date: (a) the Pre-Petition Agreements are valid and binding agreements and obligations of Debtor, (b) the principal amount of the Pre-Petition Debt due and payable to UFS by the Debtor, according to the Debtor's books and records as of July 31, 2009, is approximately $477,000.00, (c) the security interests in and liens upon the Pre-Petition Collateral of UFS are valid, perfected, enforceable and non-voidable, (d) UFS's pre-petition claims against Debtor and the estate of Debtor are allowable and are valid, enforceable and non-voidable in the amount of the Pre-Petition Debt as set forth in UFS's books and records together with all interest, fees, commissions, costs and expenses accrued and accruing with respect thereto pursuant to the terms of the Pre-Petition Agreements, (e) Debtor does not possess and may not assert any claim, counterclaim, setoff or defense of any kind or nature which would in any way affect the validity, enforceability and non-avoidability of the Pre-Petition Debt and UFS's security interests in and liens upon the Pre-Petition Collateral or will reduce or affect the obligation of the Debtor to pay the Pre-Petition Debt and (f) UFS and its agents and employees

are released and discharged from all claims and causes of action arising out of the Pre-Petition Agreements or UFS's relationship with Debtor prior to the entry of this Order.

9.     The extent, validity, perfection, enforceability of UFS's pre-petition liens or any other claims whatsoever against UFS, including claims based on the matters enumerated in paragraph 8 and claims arising from or relating to the fees, charges, interest, commissions and expenses chargeable by UFS pursuant to the terms of the Financing Agreement, are for all purposes subject only to the rights of the Creditors' Committee, whether said rights are independent or derivative, for a period of sixty (60) days from the Final Order to file a complaint pursuant to Bankruptcy Rule 7001 with respect to the foregoing. If such complaint is not so timely filed, the Pre-Petition Debt and UFS's security interests and liens in the Pre-Petition Collateral shall be recognized as valid, binding, allowed and in full force and effect with respect to all parties in this proceeding, including, without limitation, any Trustee or successor Trustee appointed hereafter and as a fully secured claim pursuant to Sections 506(a) and (b) of the Code.

10.     To secure the prompt payment and performance of any and all obligations, liabilities and indebtedness of the Debtor to UFS of whatever kind or nature or description now existing or hereafter arising, including, without limitation, all post petition obligations, liabilities and indebtedness of the Debtor arising under the Financing Agreement (collectively, the "Indebtedness"), UFS shall have and is hereby granted, effective on and after the date of this Order, (i) with respect to the Post-Petition Debt, valid and perfected first priority security interests and liens, superior to all other creditors of the estate of the Debtor, except as set forth in

paragraphs 11 and 25 below, in and upon all now existing and hereafter acquired personal and real property, if any, of whatever kind or nature, whether acquired prior to or after the filing of the petition commencing the Debtor's Chapter 11 case, including, without limitation, and by way of general description, all personal and fixture property of every kind and nature including without limitation all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts receivable, accounts (including heath-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, and all general intangibles (including all payment intangibles), and all products and proceeds thereof; and (ii) with respect to the Pre-Petition Debt, a replacement lien in the Collateral to the extent of the use of any Pre-Petition Collateral.  Notwithstanding the foregoing, there shall be no liens on claims pursuant to Chapter 5 of the Bankruptcy Code.

11.     Notwithstanding anything to the contrary set forth in paragraph 10 hereof, the security interests in and liens of UFS upon the Collateral shall (a) be subject to the statutory fees of the United States Trustee, (b) be subject to the fees and expenses incurred by professional persons retained by the Creditors' Committee appointed herein in amounts not to exceed ten thousand dollars ($10,000), and (c) be subject to the fees and commissions of a Chapter 7 trustee in an amount not to exceed ten thousand dollars ($10,000), provided, however, that any recoveries realized against UFS pursuant to paragraph 9 above, will first be used to pay

professionals retained by the Debtor and the Creditors' Committee prior to utilization of the carve-outs.

12.     UFS shall have all rights and remedies with respect to the Debtor, the Pre-Petition Debt, the Post-Petition debt and the Collateral as were set forth in the Pre-Petition Agreements and as are set forth in the Financing Agreement and in this Final Order, respectively.

13.     The Financing Agreement shall be subject to termination in UFS's sole and complete discretion as to any future loans, advances and other credit accommodations to be made or provided by UFS to Debtor including immediately upon the occurrence of any Event of Default (as hereinafter defined) or the expiration or termination of Debtor's authorization to borrow from UFS pursuant to this Final Order or any other order authorizing the granting of credit by UFS to Debtor pursuant to Section 364 of the Code as may hereafter be entered by this Court.  In the event the Financing Agreement is terminated, UFS agrees to provide five business days' notice of same to the Debtor, Debtor's Counsel, the United States Trustee's Office and the Creditors' Committee and/or its counsel.

14.     The Debtor shall use its best efforts to act strictly in accordance with the Budget, but nothing contained in this Final Order, the Budget, the Financing Agreement or otherwise shall be construed to in any way limit the discretion of UFS, exercised in good faith, to make any loans or advances to Debtor, whether in accordance with the Budget or otherwise. The Debtor shall provide UFS with additional and/or updated budgets and projections for such periods and in

such form and such detail as may be reasonably requested by UFS ("Additional Budgets") subject to UFS's acceptance thereof for purposes hereof and of the Financing Agreements. Debtor shall provide the Creditors' Committee and/or its counsel, with copies of any accepted Additional Budgets.

15.     UFS may apply the proceeds of the Pre-Petition Collateral to the Pre-Petition Debt in such order or manner as UFS may deem appropriate, and apply the proceeds of the Post-Petition Collateral to the Post-Petition Debt.

16.     Intentionally left blank.

17.     Subject to the provisions contained in paragraph 9 of this Final Order, this Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests in and liens upon the property of the estate of Debtor granted to UFS as set forth herein, without the necessity of filing, recording or serving any financing statements, mortgages or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to UFS in this Final Order and the Financing Agreement. Such security interests and liens granted to UFS shall be prior and senior to all security interests, liens, claims, and encumbrances of all other creditors in and to such property, except as otherwise set forth in paragraph 11 of this Final Order.  If UFS shall, in its discretion, elect for any reason to file any such financing statements or other documents with respect to such security interests and liens, Debtor is authorized and directed to execute, or cause to be executed, all such financing

statements or other documents upon UFS's reasonable request and the filing, recording or service thereof (as the case may be) of such financing statements or similar documents shall be deemed to have been made at the time of and on the Petition Date. UFS may, in its discretion, file a certified copy of this Final Order in any filing or recording office in any County or other jurisdiction in which Debtor has real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Final Order.

18.     Debtor is hereby authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements in addition to the Financing Agreement, as UFS may reasonably require as evidence of and for the protection of the Indebtedness and the Collateral or which may be otherwise deemed necessary by UFS to effectuate the terms and conditions of this Final Order and the Financing Agreement, each of such documents, instruments, and agreements being included in the definition of "Financing Agreement" contained herein.

19.     Debtor is authorized and directed to immediately remit directly to UFS all payments received from its account debtors and other parties, now or hereafter obligated to pay Debtor for inventory or other property of the estate. UFS is authorized to apply such payments and proceeds received by UFS to the indebtedness as set forth in this Final Order.

20. Debtor is authorized and directed, without further order of this Court, promptly: to pay or reimburse UFS for all Post Petition costs and expenses paid or incurred by UFS in connection with effectuating or enforcing the financing transactions provided in this Final Order and the Financing Agreements. UFS will notify the Debtor, United States Trustee, and the Creditors' Committee and/or its counsel of the amount of all fees, commissions, costs and expenses included hereafter as part of the Indebtedness. With regard to that portion of the Post-Petition Debt pertaining to legal fees and expenses incurred by UFS, UFS shall deliver a copy of the invoices for fees and disbursements issued by counsel for UFS, redacted if necessary, so as not to divulge privileged matters, to counsel for the Debtor, the Creditors' Committee and/or its counsel and the United States Trustee, within ten (10) business days of receipt by UFS of written request for the same. If the Debtor, the Creditors' Committee, or the United States Trustee object to the amount of legal fees or expenses of UFS charged to the Debtor, then payment of such legal fees and expenses shall be subject to further order of this Court.

21. Debtor is authorized and directed to remit, or cause to be remitted, to UFS, all cash proceeds of the Collateral now in the possession of Debtor or any other party, or hereafter coming into the possession of Debtor or any other party.

22. UFS is authorized to apply such cash collateral and the proceeds thereof as set forth in this Final Order and the Financing Agreement.

23. The automatic stay provisions of Section 362 of the Code are modified to the

extent necessary to Final UFS to implement the financing of the Debtor and the provisions of this Final Order.

24.     Debtor is authorized and directed to provide to UFS, unless there is a written waiver by UFS in each instance, all of the documentation, reports, schedules, assignments, financial statements, insurance policies and endorsements, access, inspection, audits, information and other rights which Debtor is required to provide to UFS under the Financing Agreement.

25.     For all of the Post Petition Debt, and in addition to the foregoing, UFS is granted an allowed super-priority administrative claim having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, now in existence or hereafter incurred by Debtor and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, Sections 330, 331, 503(b), or 507(b) of the Code pursuant to Section 364(c)(1) of the Code, provided, however, that UFS's super-priority administrative claim as provided herein shall be subordinate to the statutory fees and expenses of the office of the United States Trustee, any Chapter 7 Trustee's commissions and expenses, and the fees and expenses of professional persons retained by the Debtor and any Creditors' Committee appointed herein, in the respective amounts set forth above minus any amounts realized on account of claims asserted against UFS pursuant to paragraph 9 above and provided, moreover, there is no priority over claims pursuant to Chapter 5 of the Bankruptcy Code. Except as provided in this paragraph and in paragraph 36 hereof, no other claim having priority superior or pari passu to that granted by this Order to UFS shall be allowed while any Indebtedness remains outstanding.

26.     No costs or expenses of administration which have or may be incurred in Debtor's Chapter 11 Case, any conversion of the Debtor's Chapter 11 Case pursuant to Section 1112 of the Code, or in any future proceedings or cases related hereto (other than the commissions and expenses of a Chapter 7 Trustee in an amount not to exceed $10,000), shall be charged against UFS, its claims, or the Collateral, without the prior written consent of UFS, and no such consent shall be implied from any other action, inaction or acquiescence by UFS.

27.     Except for sales of inventory in the ordinary course of its business, Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any material portion of the property of its estate without the prior written consent of UFS and no such consent shall be implied from any other action, inaction or acquiescence by UFS, or by Order of the Bankruptcy Court on prior notice to UFS.

28.     In the event of the occurrence of any of the following: (a) the failure of the Debtor to perform in any material respect any of its obligations pursuant to this Order, (b) occurrence of any "Event of Default" under the Financing Agreement, see below, (c) a "material adverse deviation" (as hereafter defined) from the Budget; (d) the termination or non-renewal of the Financing Agreement as provided for in this Final Order, (e) conversion of the Chapter 11 case of the Debtor to case under Chapter 7 of the Bankruptcy Code, (f) the appointment of a Trustee appointed pursuant to Section 1104(a)(1) of the Code, or appointed pursuant to Section 1104(a)(2) of the Code or the appointment of an Examiner with expanded powers, (g) dismissal

of the Debtor's Chapter 11 Case, (h) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating or amending any material provision of this Final Order without the express prior written consent of UFS (and no such consent shall be implied from any other action, inaction or acquiescence by UFS), (i) the foregoing being referred to in this Final Order, individually, as an "Event of Default" and collectively, "Events of Default"; then (unless such Event of Default is specifically waived in writing by UFS, which waiver shall not be implied from any other action, inaction or acquiescence by UFS) and upon or after the occurrence of any of the foregoing, and at all times thereafter, after giving five (5) business days notice in writing served by overnight delivery service upon Debtor, Debtor's counsel, the Creditors' Committee and/or its counsel: (1) all of the Indebtedness shall become immediately due and payable, and (2) UFS shall be entitled to the entry of an Order, without prejudice to the rights of other parties to object solely on the basis that no Event of Default has occurred, vacating or modifying the automatic stay and any other restriction on the enforcement of its liens and security interests or any other rights under the Financing Agreements granted to UFS or pursuant to this Final Order authorizing UFS to take any and all actions and remedies which UFS may deem appropriate to proceed against and realize upon the Collateral and any other property of the estate of the Debtor upon which UFS has been or may hereafter be granted liens and security interests to obtain repayment of the Indebtedness. UFS shall have no obligation to lend or advance any additional funds to Debtor or provide other financial accommodations to Debtor upon or after the occurrence of an Event of Default. For purposes of this paragraph 28, if the actual amount of any item of sales, receipts or expenses has a negative variance of ten (10%) percent or more than the amounts projected in the Budget, or if dilution in the collection of accounts exceeds ten (10%)

percent, such deviation shall constitute a "material adverse deviation" from the Budget. An "Event of Default" under the Financing Agreement shall mean, but not be limited to, the Debtor's failure to pay or perform under the terms or conditions of the Financing Agreements, the submission of any information relating to the Accounts, Client Risk Receivables or to the Debtor's operations or financial condition that is false in any material respect, or Debtor omits to provide material information relating to the Accounts, Client Risk Receivables, Debtor's operations or financial condition; Debtor is unable to meet their obligations as they mature; Debtor suspends its business as a going concern, makes an assignment for the benefit of creditors, or applies for an extension from its creditors. All terms used herein shall have the same meaning as defined in the Financing Agreements.

29.    Unless an Event of Default occurs sooner, upon the expiration of Debtor's authority to borrow from UFS and obtain other credit accommodations from UFS pursuant to this Final Order, all of the indebtedness shall immediately become due and payable and, provided UFS has provided notice to the Debtor, Debtor's Counsel, the Creditors' Committee and/or its counsel, at least fifteen (15) days prior to the termination date that such financing will not be extended, UFS shall be automatically and completely relieved from the effect of any stay, including, without limitation, any stay under Section 362 of the Code or any other restriction on the enforcement of the liens and security interests or any other rights granted to UFS pursuant to the terms and conditions of the Financing Agreement or this Final Order, and UFS shall be and is hereby authorized, in its discretion, to take any and all actions and remedies which UFS may deem appropriate and to proceed against and realize upon the Collateral and any other property

of the estate of the Debtor upon which it has been or may hereafter be granted liens and security interests to obtain repayment of the Indebtedness including, without limitation, all such actions and remedies set forth in the Financing Agreement (except if the authority of the Debtor to borrow from UFS shall be extended with the prior written consent of UFS, which consent shall not be implied from any other action, inaction or acquiescence by UFS).

30.     Until all of the Indebtedness shall have been indefeasibly paid and satisfied in full and without further order of the Court: (a) no other party shall foreclose or otherwise seek to enforce any junior lien or other right such other party may have in and to any property of the estate of the Debtor upon which UFS holds or asserts a lien or security interest and (b) upon and after the occurrence of an Event of Default, UFS, in its discretion, in connection with a liquidation of any of the Collateral may use any real property, equipment, leases, trademarks, tradenames, copyrights, licenses, patents or any other assets of the Debtor which are owned by or subject to a lien of any third party which has been served with a copy of the Final Order and which are used by Debtor in its business.

31.     Upon the payment in full of all Indebtedness to UFS, or upon the termination of this Final Order, UFS shall be released from any and all obligations pursuant to the terms of the Interim Order or this Final Order and/or the Financing Agreement.

32.     UFS shall be entitled to the full protection of Section 364(e) of the Code with respect to debts, obligations, liens, security interests and other rights created or authorized in this

Final Order in the event that this Final Order or any authorization contained herein is vacated, reversed or modified on appeal or otherwise by any court of competent jurisdiction.

33.     All advances under the Financing Agreement are made in reliance on this Final Order and there shall not at any time be entered in Debtor's Chapter 11 case any order which (a) authorizes the use of cash collateral of Debtor in which UFS has an interest, or the sale, lease, or other disposition of property of the estate of the Debtor in which UFS has a lien or security interest or (b) under Section 364 of the Code authorizes the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which UFS holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to UFS herein; unless, in each instance (c) UFS shall have given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by UFS, or (d) such other order requires that the UFS Indebtedness shall first be indefeasibly paid in full, including all debts and obligations of the Debtor to UFS which arise or result from the obligations, loans, security interests and liens authorized herein. The security interests and liens granted to UFS hereunder and the rights of UFS pursuant to this Final Order with respect to the Indebtedness and the Collateral shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtor, unless UFS shall expressly consent in writing that the Indebtedness shall not be repaid in full upon confirmation thereof, in which event the Indebtedness shall continue after confirmation and consummation of any such plan.

34.     The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered converting Debtor's Chapter 11 case to a Chapter 7 case or any order which may be entered confirming or consummating any plan of reorganization of the Debtor, and the terms and provisions of this Final Order as well as the priorities in payment, liens, and security interests granted pursuant to this Final Order and the Financing Agreement shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain its priority as provided by this Final Order until all Indebtedness is indefeasibly satisfied and discharged; provided, that, all obligations and duties of UFS hereunder, under the Post-Petition Financing Agreements or otherwise with respect to any future loans and advances or otherwise shall terminate immediately upon the earlier of the date of any Event of Default or the date that a sale of substantially all of the Debtors' assets has occurred unless UFS has given its express prior written consent to extend the Financing Agreement beyond such date, no such consent being implied from any other action, inaction or acquiescence by UFS.

35.     The provisions of this Final Order shall inure to the benefit of the Debtor and UFS and shall be binding upon the Debtor and its successors and assigns, including any Trustee or other fiduciary hereafter appointed as a legal representative of the Debtor or with respect to property of the estate of the Debtor, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case, and shall also be binding upon all creditors of the Debtor and other parties in interest.

36.     Intentionally left blank.

37.     Debtor irrevocably waives any right to seek any modifications or extensions of this Final Order without the prior written consent of UFS.

38.     To the extent the terms and conditions of the Financing Agreement are in conflict with the terms and conditions of this Final Order, the terms and conditions of this Final Order shall control.

39.     The Debtor alleges that the terms of the financing arrangements between the Debtor and UFS, were negotiated in good faith and at arms' length between the Debtor and UFS and any loans, advances or other financial accommodations which are caused to be issued to the Debtor by UFS pursuant to the Financing Agreement are deemed to have been extended in good faith, as the term is used in Section 364(e) of the Code, and shall be entitled to the full protection of Section 364(e) of the Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

40.     Notwithstanding anything to the contrary in the Pre-petition agreements: (a) the filing of a Chapter 11 case does not constitute an act of default; (b) UFS shall not be indemnified for its own fraud or gross negligence; and (c) the Bankruptcy Court shall have jurisdiction to determine disputes.

41.     Nothing contained in this Final Order or the Financing Agreement shall be deemed to terminate, modify or release any obligations of Debtor or any non-debtor guarantor to UFS with respect to the Pre-Petition Debt, the Indebtedness or otherwise.

42.     Notice of the entry of this Final Order must be served upon (a) the Office of the United States Trustee, (b) the attorneys for UFS, (c) all creditors known to Debtor who may have liens against the Debtor's assets, (d) the United States Internal Revenue Service, (e) the Creditors' Committee and/or its counsel, (f) all landlords, owners, operators and mortgagors of the premises at which any inventory of the Debtor is located, (g) all other interested third parties in possession of any of the Debtor's inventory, including, without limitation, sales agents or representatives and consignees, and (h) all parties in interest who have filed a Notice of Appearance in the Debtor's Chapter 11 Case.

43.     The terms of this Final Order shall be valid and binding upon the Debtor, all creditors of the Debtors and all other parties in interest from and after the date of this Final Order by this Court. In the event this Court modifies any of the provisions of this Final Order and the Financing Agreement following such further hearing, such modifications shall not affect the rights and priorities of UFS pursuant to this Final Order with respect to the Collateral and any portion of the Indebtedness which arises, or is incurred or is advanced prior to such modifications (or otherwise arising prior to such modifications), and this Final Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

Dated: New York, New York
        September 15, 2009

                                        /s/Burton R. Lifland_____
                                        HON. BURTON R. LIFLAND
                                        UNITED STATES BANKRUPTCY JUDGE